IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Brandon Devin Addy, | ) | Civil Action No. 8: 13-CV -00027-JMC-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Carolyn W. Colvin,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to

28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.[2]  Plaintiff brought this

action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the

Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for

disability insurance benefits ("DIB").  For the reasons set forth below, it is recommended

that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

On September 19, 2008, Plaintiff filed an application for DIB, alleging an onset of

disability date of January 31, 2005.[3]  [R. 152-157. ]   The claim was denied initially on

August 4, 2009 [R. 82-86 ], and on reconsideration on July 9, 2010 [R. 90-92], by the

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[3]Amended to April 20, 2006.  [R. 27.]

Social Security Administration ("the Administration").  Plaintiff requested a hearing before an administrative law judge ("ALJ"), and on July 15, 2011, ALJ Gregory M. Wilson conducted a de novo hearing on Plaintiff's claims.  [R. 7-54.]

The ALJ issued a decision on August 9, 2011, finding Plaintiff not disabled under the Social Security Act ("the Act").  [R. 59-81.]  At Step 1,[4] the ALJ found Plaintiff last met the insured status requirements of the Act on December 31, 2010, and had not engaged in substantial gainful activity from his amended alleged onset date of April 20, 2006 through his date last insured of December 31, 2010.  [R. 64, Findings 1 & 2.]  At Step 2, the ALJ found Plaintiff had severe impairments of degenerative disc disease of the lumbar spine and status post artificial disc replacement at L4-5 with left lower extremity radiculopathy.  [R. 64, Finding 3.]  The ALJ also found Plaintiff had a non-severe impairment of depression.  [R. 65.]  At Step 3, the ALJ determined the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  The ALJ specifically considered Listing 1.04, Disorders of the spine [R. 71, Finding 4], and the "paragraph B" criteria of Listing 12.00 for adult mental disorders [R. 65, Finding 3].

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ made the following findings as to Plaintiff's residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform work as defined in 20 CFR 404.1567(b) except no lifting and/or carrying over 20 pounds occasionally and 10 pounds frequently; no standing and/or walking over 6 hours in an 8-hor workday; no more than occasional stooping,

---

[4] The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

twisting, crouching, kneeling, crawling and climbing of stairs or ramps; no climbing of ladders or scaffolds; no more than occasional use of foot pedals or other controls with the lower extremity; and avoidance of hazards such as unprotected heights, vibration, and dangerous machinery.

[R. 71-72, Finding 5.]   Based on this RFC, at Step 4, the ALJ found Plaintiff was unable to perform his past relevant work.   [R. 75, Finding 6.]   Considering Plaintiff's age, education, work experience and residual functional capacity, however, the ALJ found there were jobs that existed in significant numbers in the national economy that the claimant could have perform.   [R. 75, Finding 10.]   Consequently, the ALJ found Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act.[5]   [R. 76, Finding 11.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and must be reversed and remanded because the ALJ

1. failed to properly weigh the medical opinion of Dr. Robert Brabham with respect to Plaintiff's vocational limitations [Doc. 11 at 4–8]; and

2. failed to properly assess Plaintiff's credibility and complaints of pain, and improperly discredited his testimony solely on a lack of objective medical evidence [*id*. at 8–9].

The Commissioner, on the other hand, submits that ALJ's decision is supported by substantial evidence, specifically arguing the ALJ

---

[5]To be entitled to DIB, Plaintiff had to prove that he was disabled on or before his date last insured. 20 C.F.R. §§ 404.315(a) (describing who is entitled to DIB); 404.130 (explaining disability insured status); *see also Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir. 1993).

3

1.      properly evaluated the opinion of Dr. Brabham and determined his opinion, based on a one time evaluation, was due on significant weight based on a lack of support from the longitudinal record [Doc. 12 at 6–11]; and

2.      properly evaluated the credibility of Plaintiff's allegations [*id*. at 12-14].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial

4

evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek  v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose."  *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence

or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[6] With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

---

[6] Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. &*

8

*Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* § 404.1521.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the

[Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

### C.     *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

### D.     *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's RFC[7] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the RFC to do his past work. 20 C.F.R. § 404.1560(b).

### E.     *Other Work*

---

[7] RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[8]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational

---

[8] An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion

does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for

13

making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.  Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.  Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the

ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable

> objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*,

16

493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Weight Assigned to the Treating Physician Opinions**

Plaintiff argues the ALJ erred by not giving proper weight to the medical opinion of Dr. Robert Brabham and by failing to take into account the fact that Dr. Brabham's opinion came only after he examined Plaintiff and subjected him to a series of psychological evaluations.  [Doc. 11 at 4-5.]  The Commissioner contends the ALJ's analysis was properly made, noting that Dr. Brabham specializes in psychological/vocational issues, not physical impairments; and the vocational limitations found would not be relevant in assessing Plaintiff's RFC.  [Doc. 12 at 7-8.]

### *Dr. Robert Brabham's Opinion*

Plaintiff last worked as a computer technician, but stopped due to a work injury to his back in January 2005.  [R. 171.]  Plaintiff made a Worker's Compensation claim which was resolved in 2008, leaving him a lump sum settlement and lifetime medical benefits for his back and left leg. [R. 12-14, 132-151.]

Plaintiff was seen by Dr. Brabham on August 29, 2007, for a psychological and vocational evaluation "to determine vocational implications, and earnings issues, if any, related to limitations resulting from on-the-job injuries sustained in January 2005. "  [R.

406.]  After awaiting additional information, Dr. Brabham prepared a report on November

19, 2007, with respect to his findings.  Upon summarizing Plaintiff's work and medical

history, Dr. Brabham provided the following vocational opinion:

> Several factors enter into reaching vocational conclusion and outlooks. They include his age, only 31, defined as a younger worker; his vocational history of work which is no longer within his medical restrictions and limitations; pain that he experiences without pain medications, and negative side effects when he takes medication; and his inability to even sit for a full work day, at least several days per week. Taking all of those factors into consideration, *it is my opinion, to a high degree of professional certainty, based on nearlv forty-five years of vocational rehabilitation experience, that he is unable to yet engage in full-time gainful, competitive emplovment in his present medical condition*.  If he is to be able to return to and sustain gainful employment, Mr. Addy needs to achieve better pain management through whatever appropriate medical services might be available. He also needs vocational rehabilitation services including alternate job exploration/counseling and/or possible retraining for eventual job placement services.

[R. 414 (emphasis in original).]   Dr. Brabham indicated the rationale for his opinion was

based on the following observations:

> Credibility: He appeared credible in his description of his limitations and remaining functional capacities. He did not appear to exaggerate symptoms, and attempted to return to work, even part time, but was not able to continue. His description of daily routines still includes efforts at productive activities, such as minimal light chores around the house.  However, in spite of his well-intended efforts, his physical limitations, complicated by repeated episodes of severe pain with even minimal exertion, do not permit him to complete significant tasks or activities on a regular, sustained basis.

> It is noted that the information provided during this evaluation was highly consistent with information reported in other reports. This provided additional confirmation that the responses and description of events and circumstances was candid, and was not feigned or exaggerated, and does not appear to represent and symptom magnification.

> It is also noted that he was excited about his annual earnings, about $40,000, as he reported. There is no rational basis to suggest that a young man would deliberately feign or fake pain and injuries to receive far less income. That simply would make no sense, especially at his young age and

18

with his past enjoyment at various physical activities with family and friends. He has lost far too much in daily terms to support any conclusion of exaggeration or faking of symptoms. I found his reports and specific examples of his limitations quite credible.

Pain Factors and Attendance Implications: He experiences pain, primarily in his back and legs, at such levels of severity as to interfere with his ability to even report to a potential job site several days each week. This would greatly exceed the average number of days that employers provide in SC.

It is also noted that he is not able to "predict" which days would be "bad days", thereby making even part-time employment unavailable. Employers would usually require that a regular schedule be established, and then honored for any employees.

[R. 414-15.]

Dr. Brabham also opined that the side effects of Plaintiff's medications, as well as the fact that his current pain management is ineffective, "prevents optimal levels of functioning as would be needed for gainful employment." [R. 415.]   Dr. Brabham also concludes that limitations on Plaintiff's ability to sit prevents even sedentary work. [*Id.*]  In summary, Dr. Brabham opined:

Based on all the evidence as described above, consistent with observations during this evaluation and various reports in his file, he would be unable to effectively perform the essential duties in any gainful work activity.

It is also dear that the unfortunate combination of factors and characteristics he now faces are directly related to the injuries he sustained while working. He was, after all, working on a full-tIme basis, for good wages at the time of his on-the-job injuries.

It must also be noted, however, that even with better medical improvement/management with his somewhat surprisingly limited academic skills in some basic areas, even if he is able to return to employment at some sedentary task, it is likely that he will still experience a loss of earnings/potential in the future. *For example, sedentary jobs that he might be able to perform with better medical improvement would likely pay about $8,00 per hour on average, in SC. This will constitute a loss of about 33% of*

19

*his income at the time of his injury.* He is, after all, if unable to perform his past work, only a high school graduate, with no associate degree or four-year degree.

[R. 416 (emphasis in original).]

### *The ALJ's Evaluation of the Dr. Brabham's Opinions*

Upon considering Dr. Brabham's opinion, the ALJ afforded "no significant weight" to the opinion, finding that it was not supported by the longitudinal record. Specifically, the ALJ provided

> A treating physician's medical opinion, on the issue of the nature and severity of an impairment, is entitle to special significance; and, when supported by objective medical evidence and consistent with other substantial evidence of record, entitled to controlling weight. Social Security Ruling 96-2P. However, the longitudinal record of treatment does not support this opinion. Dr. Brabham is also noted as a onetime evaluating physician and his opinion is afforded no significant weight. It must further be noted that Dr. Brabham's opinion appears to be based upon the claimant's own report and; in part by the Functional Capacity Evaluation, [in] which Dr. Brabham neglected to indicate that the claimant's inability to work more than part time as stated by the physical therapist was based solely on the claimant's deconditioning. Further, his opinion is not binding because he is not a "physician designated by the Commissioner" and, in effect, giving controlling weight to his opinion would give him the authority to decide the issue of disability, an issue that is reserved to the Commissioner. Social Security Ruling 96-5p.

### *Analysis*

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Courts typically "accord 'greater weight to the testimony of a

20

treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c).

The opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Additionally, Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996). However, not every opinion offered by a treating source is entitled to deference:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not

21

> be disregarded. However, even when offered by a treating
> source, they can never be entitled to controlling weight or given
> special significance.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(e)

(stating an ALJ does not have to "give any special significance to the source of an opinion

on issues reserved to the Commissioner," such as an opinion that the claimant is disabled,

the claimant's impairment or impairments meets or equals a listing, or the claimant has a

certain residual functional capacity).

**Discussion**

Upon consideration, the Court finds that the ALJ's decision to discount Dr.

Brabham's opinion is supported by substantial evidence. In the first instance, a conclusory

opinion of disability is not controlling since the issue of disability is the ultimate issue in a

Social Security case and the issue is reserved for the Commissioner. See 20 C.F.R. §

404.1527(e)(1); *Castellano v. Secretary of Health & Human Servs*., 26 F.3d 1027 (10th

Cir.1994); *see also Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir.2002) (statements

that a claimant could not be gainfully employed are not medical opinions, but opinions on

the application of the statute, a task assigned solely to the discretion of the Commissioner).

Second, the ALJ discounted Dr. Brabham's opinion because it was based on one

evaluation and was inconsistent with the medical evidence of record. The purpose of Dr.

Brabham's exam was "to determine vocational implications, and earnings issues, if any,

related to limitations resulting from on-the-job injuries sustained in January 2005." [R. 406.]

In his opinion, Dr. Brabham summarized the medical records from a number of sources

and gave his opinion regarding Plaintiff's mental and physical limitations based on those

records.  Curiously, however, the records summarized by Dr. Brabham also contained evidence from other physicians, who are specialists with respect to Plaintiff's impairments, which contradicted his opinion.

Dr. Brett Gunter ("Dr. Gunter"), for instance, performed Plaintiff's disc replacement surgery in 2006; in February 2007, however, Dr. Gunter restricted Plaintiff on a lifetime basis from repetitive heavy lifting of objects weighing more than 25 pounds, but added that, "[o]ther than that, there are no physical restrictions for this patient."  [R. 306.]  In November 2007, Dr. Gunter reviewed Plaintiff's case at the request of his attorney due to "the extent of his current hip and leg pain", and changed Plaintiff's whole person impairment rating from 10 percent to 17 percent, noting that " [o]therwise his restrictions need not be changed."  [R. 305.]  Additionally, in July 2007, Dr. Steven Storick, who saw Plaintiff for pain management, released Plaintiff "under the previous limitations/restrictions of the November 2006 FCE and the rating assigned by Dr. Gunter."  [R. 272.]

The November 2006 FCE performed by physical therapist Deborah Pitts found Plaintiff could perform work at the sedentary to light level, but only on a part-time basis due to "significant deconditioning and limited positional tolerance"  [R. 462].  Ms. Pitts also noted that Plaintiff "would have been an excellent candidate for Work Conditioning, however, he did not comply with Physical Therapy as ordered by his physician and recommended by the physical therapist after the initial evaluation." [*Id.*] Moreover, in August 2007, Dr. Donald Johnson, who performed an independent evaluation for Plaintiff's workers compensation claim, opined that, in light of Plaintiff's complications with artificial disc replacement, "I don't feel at this point [Plaintiff] can return to work *other than sedentary*

and probably needs some retraining to participate at this level of activity." [R. 405 (emphasis added).]

Based on a review of the evidence of record, the Court finds the ALJ's treatment of Dr. Brabham's opinion is supported by substantial evidence. Neither Dr. Brabham nor Plaintiff provided any explanation for the inconsistencies between his opinion and the evidence of record on which he relied. Accordingly, the Court declines to remand on this basis.

**Credibility**

Plaintiff contends the ALJ erred in discrediting Plaintiff's allegations that he is unable to carry heavy objects, that he had difficulty performing household chores, and various other physically related limitations. [Doc. 11 at 8.] Specifically, the Plaintiff contends Dr. Johnson opined he is not able to return to work other than sedentary which is defined to involve lifting no more than 10 pounds. [*Id.* at 9.] Additionally, Plaintiff takes issue with the ALJ's description of his daily activities as representative of a "fairly active and varied lifestyle" when his activities are of necessity in that he lives alone. [*Id.*]

In considering Plaintiff's testimony regarding his limitations, the ALJ must consider all relevant evidence of record. *See* SSR 96-7p, 61 Fed. Reg. at 34,485 (whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire case record.) The credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently

24

specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*; *see also Hammond*, 765 F.2d at 426 (stating that the ALJ's credibility determination "must refer specifically to the evidence informing the ALJ's conclusions").

The following is a nonexhaustive list of relevant factors the ALJ should consider in evaluating a claimant's symptoms, including pain: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication, received to relieve the symptoms; and (6) any measures the claimant has used to relieve the symptoms. 20 C.F.R. § 1529(c)(3). If the ALJ points to substantial evidence in support of his decision and adequately explains the reasons for his finding on the claimant's credibility, the court must uphold the ALJ's determination. *Mastro*, 270 F.3d at 176 (holding that the court is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency).

### *ALJ's Consideration of Plaintiff's Credibility*

In evaluating Plaintiff's credibility, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and  also "considered opinion evidence" [R. 72] and found that "claimant's medically determinable impairments could reasonably be expected to cause some alleged symptom" [R. 73].  The ALJ expressly considered

> At the July 15, 2011 hearing, the claimant testified that he was single, 35 years old, and that he has lived alone for 20 years. He testified that he was right handed, was 72 inches tall and weighed 192 pounds. He stated

25

that he had a current SC driver's license but that his parents drove him to the hearing. He stated that he owned a 2000 Ford Explorer. He testified that he received a workers' compensation settlement in May 17, 2008 and that he received $83,000, in addition to lifetime medical expenses for his back and left leg. He stated that he had tried to return to work but he could not after his injury. The claimant asserted that he experiences sharp pains in his back and pain into his left leg and stated that he experiences medication side effects including tiredness from the Neurontin and the Nucyanta makes him tired. Since 2010, he has been taking 1800mg a day for the past six months and it still makes him tired as well as the Parafen that was recently started. He testified that he experiences difficulty sleeping more than 4-5 hours per night, and goes to be about 11 pm and gets up about every 1 - 2 hours, from 30 minutes to 2 hours, until about 9am and naps two hours in the afternoons, for the past two years.

He testified that he could lift about 20 pounds but could not carry that much, but could lift and carry about 10 pounds; sit about 30 minutes at one time; stand less than 15 minutes; and walk 100-150 feet before needing to stop ever since his surgery. He testified that he was also taking Cymbalta for depression and somewhat helps his anxiety and pain but stated that he has never been referred to mental health. He testified that he was able to drive but experienced pressure in the lower back when pressing on the gas pedal. He testified that he can cook using the microwave but used to cook more, and asserted that he cleans his house but had difficulty washing clothes and washing dishes due to bending over. He stated that he grocery shops but had difficulty walking and carrying the groceries and asserted that he spends about three days a week in bed due to his pain with no precipitating specific factor.

[R. 73.]

After reviewing this evidence, however, the ALJ determined that "the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment. [*Id.*]   The ALJ explained his decision as follows:

In terms of the claimant's alleged inability to lift and carry more than 10 pounds; inability to sit longer than 30 minutes at one time; inability to stand more than 15 minutes; and inability to walk more than 100-150 feet, there is no documented medical evidence from any treating physician that the claimant has reported such complaints or that he has had such limitations/restrictions placed upon him.

In support of this, there is a lack of reports from any treating source that the claimant's impairments are actually debilitating to the point of precluding substantial gainful activity. Further, there is a lack of objective evidence or clinical findings indicating that the claimant had any significant impairment related functional limitations.

As previously discussed, the claimant suffered a work-related injury with resulting back and left lower extremity pain. Conservative treatment was not effective and he underwent L4-5 replacement with an artificial disc in April 2006 (Exhibit 2F). Follow up x-rays on August 23, 2006, showed proper alignment of the disc (Exhibit 4F).

The Functional Capacity Assessment in November 2006 indicated that the claimant could do sedentary to light physical labor, but due to his deconditioning, only on a part-time basis currently. The Physical Therapist also stated that the claimant "is able to do more than he perceives himself capable" (Exhibit 25F, page 21). The evaluation further noted that the claimant did not comply with physical therapy as was ordered by his physician and recommended by the physical therapist (page 22).

The claimant's treating surgeon on February 6, 2007, that the claimant had reached maximum medical improvement and assigned an impairment rating of 10% whole person (Exhibit 7F). However, in a response to the claimant's workers' compensation attorney, Dr. Gunter increased the rating to 17% but noted that the restriction of no repetitive lifting of greater than 25 pounds did not need to be changed.

The claimant testified that he has been unable to sleep more than 4-5 hours at night, going to sleep at 11:00 pm and waking up at 9:00 am for about the last two years because of pain. He said he wakes up every 1 1/2 to 2 hours, remains awake for 3 minutes to 2 hours and repeats the cycle and that he sleeps 2 hours during each day, usually from 2:00pm to 4:00pm.

The claimant also testified that he does not see a mental health professional on a regular basis for treatment of any mental disorder and that he had never been referred for treatment.  However, Dr. Crigler indicated that psychiatric care had been recommended (Exhibit 13F).

The evidence also shows that the claimant had a stimulator installed in December 2010 (Exhibit 21F, page 3) with a successful stimulator trial.

The evidence also shows that the claimant has been diagnosed with diabetes mellitus, the evidence further shows that it is well controlled as long as he takes his medication as prescribed (Exhibit 13F).

27

The evidence does not show neurological deficits, muscle spasms, fasciculation, fibrillations, or muscle atrophy or dystrophy that are often associated with long-standing, severe, or intense pain, or physical inactivity.

Physical examinations have often been normal other than some reduced range of motion and reported tenderness by the claimant. It is particularly noteworthy that although the claimant alleges disability in part due to debilitating musculoskeletal pain, he is consistently described in treating physicians' notes for many years throughout the record, as not appearing in any apparent distress; without any significant mobility limitations; and with no need for an assistive device.

The claimant betrayed no evidence of pain or discomfort while testifying at the hearing and was very pleasant. He also had no difficulty in participation in the hearing. He was able to listen, maintain attention and concentration, and respond appropriately to questions. While the hearing was short-lived and cannot be considered a conclusive indicator of the claimant's overall level of pain and functioning on a day-to-day basis, his appearance during the hearing is given some slight weight in reaching the conclusion regarding his credibility.

It must further be noted that there have been no frequent emergency room visits, no intensive inpatient or outpatient hospital visits, no further surgical intervention, and no reported atrophy or changes in weight, which are reliable indicators of iong standing, severe, or intense pain.

In addition, the claimant's own testimony shows that his description of his daily activities, including driving his car, grocery shopping, performing household chores, cooking, using his computer, and attending physician appointments, is representative of a fairly active and varied lifestyle and was not indicative of a significant restriction of activities or constriction of interests. *Mickles v. Shalala*, 20F.3d 918 (4th Cir. 1994).

[R. 73-74.]

### *Discussion*

Upon review, the Court finds the ALJ conducted a proper analysis in determining the credibility of Plaintiff's subjective complaints by fully explaining his decision and citing relevant evidence. Additionally, the ALJ explained his evaluation of Plaintiff's RFC and his consideration of all relevant evidence in the record, including medical history, medical

signs, laboratory findings, lay evidence, and medical source statements.  While Plaintiff argues the Commissioner failed to provide evidence to support its RFC finding, it is the Plaintiff's burden to establish disability in Steps 1 through 4 of the sequential evaluation, *Grant*, 699 F.2d at 191; thus, Plaintiff bore the burden of establishing his inability to perform work-related activities.  Plaintiff, however, has failed to direct the Court to any evidence, not considered by the ALJ, that would support greater limitations than those assessed by the ALJ.  *See Craig*, 76 F.3d at 589 (stating that, where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner](or the [Commissioner's] designate, the ALJ)," not on the reviewing court; the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the Commissioner's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence); *Laws*, 368 F.2d at 642 (holding it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner, so long as the decision is supported by substantial evidence); *Snyder*, 307 F.2d at 520 (same).  Thus, without a showing by Plaintiff that the Commissioner's decision is not supported by substantial evidence, the Court is bound to uphold the decision.

## CONCLUSION AND RECOMMENDATION

Wherefore, based on the foregoing, it is recommended that the decision of the Commissioner be affirmed.

29

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 5,  2014
Greenville, South Carolina